IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JEFFREY J. SCOTT, | ) | |
| | ) | |
| Plaintiff, | ) | CV NO. 5:12-cv-917-DAE |
| | ) | |
| v. | ) | |
| | ) | |
| BANK OF AMERICA, N.A., | ) | |
| SUCCESSOR BY MERGER TO | ) | |
| BAC HOME LOANS SERVICING, | ) | |
| L.P., f/k/a COUNTRYWIDE HOME | ) | |
| LOANS SERVICING, L.P., | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

ORDER: (1) DENYING PLAINTIFF'S MOTION FOR NEW TRIAL;
(2) DENYING DEFENDANT'S MOTION FOR SANCTIONS

Before the Court is a Motion for New Trial[1] (Dkt. # 23) filed by

Plaintiff Jeffrey J. Scott ("Plaintiff") and a Motion for Sanctions (Dkt. # 27) filed

by Defendant Bank of America, N.A. ("Defendant").  The Court heard argument

regarding Plaintiff's Motion for New Trial and Defendant's Motion for Sanctions

on October 21, 2013.  Kenneth E. Grubbs, Esq., and Christopher Deeves, Esq.,

appeared at the hearing on behalf of Plaintiff; Nathan T. Anderson, Esq., appeared

at the hearing on behalf of Defendant.  After reviewing the Motions and the

---

[1]     Because there was no trial in this matter, there could not be a "new" trial as
requested.

1

supporting and opposing memoranda, the Court **DENIES** both Plaintiff's Motion

for New Trial and Defendant's Motion for Sanctions.

<u>BACKGROUND</u>

I.   <u>Factual History</u>

On October 14, 2002, Plaintiff and his wife, Paula Ann Moody-Scott,

obtained a loan in the amount of $171,200 from Countrywide Home Loans, Inc.

("Countrywide"), which was secured by a mortgage on property located at 414

Calumet Place, San Antonio, Texas 78209 ("the Property").  (Dkt. # 12 ("FAC")

¶ 4; Dkt. # 14, Ex. 1.)  Plaintiff executed a promissory note ("the Note").  (Dkt.

# 14, Ex. 1.)  The Note stated that Plaintiff promised to pay Countrywide, "the

Lender," in return for the loan received and provided that "anyone who takes this

Note by transfer and who is entitled to receive payment under this Note is called

the 'Note Holder.'"  (<u>Id.</u>)  Plaintiff also executed a Deed of Trust.  (Dkt. # 14, Ex.

2.)  The Deed of Trust identified Countrywide as "the Lender" and stated that

Mortgage Electronic Registration Systems, Inc. ("MERS") was "a nominee for

Lender and Lender's successors and assigns" and "a beneficiary under [the Deed

of Trust]."  (<u>Id.</u>)  The Deed of Trust also stated:

> Borrower [Plaintiff] understands and agrees that MERS holds only
> legal title to the interests granted by Borrower in this Security
> Instrument, but, if necessary to comply with law or custom, MERS (as
> nominee for Lender and Lender's successors and assigns) has the
> right: to exercise any or all of those interests, including, but not
> limited to, the right to foreclose and sell the Property. . . .

(Id. at 3.)

On April 6, 2012, Susan Douglas, acting on behalf of MERS, executed an Assignment of the Deed of Trust, which purported to "grant, sell, assign, transfer and convey unto Bank of America, N.A. . . . all beneficial interest under [the Deed of Trust] together with the note(s) and obligations therein described and . . . all rights accrued or to accrue under said Deed of Trust."  (Dkt. # 14, Ex. 3.)

According to Defendant, Plaintiff failed to make timely mortgage payments, and a foreclosure was scheduled for September 4, 2012.  (Dkt. # 14 at 4.)

II.   Procedural History

On September 4, 2012, Plaintiff filed a Complaint in state court.  (Dkt. # 1, Ex. 1.)  On September 28, 2012, Defendant filed a Notice of Removal in this Court.  (Dkt. # 1.)  On October 5, 2012, Defendant filed a Motion to Dismiss Plaintiff's Complaint.  (Dkt. # 3.)  On November 1, 2012, Plaintiff submitted a Motion to File an Amended Complaint (Dkt. # 8), which the Court granted on November 27, 2012 (Dkt. # 11).

Plaintiff's First Amended Complaint was filed that same day.  (FAC.) Plaintiff's First Amended Complaint alleged that the assignment was void because Susan Douglas, who "purport[ed] to be an assistant secretary of MERS," is, in fact,

"a robosigner working for one of the various document mills" (FAC ¶ 5), and "signed in a capacity which she did not hold or have authority to sign under" (id. ¶ 17).  Plaintiff further alleged that "the document may itself be fake, fraudulent and void because the signature on the document may not actually be the signature of [Susan] Douglas."  (Id. ¶ 17.)  The First Amended Complaint asserted causes of action for: (1) violations of the Texas Uniform Commercial Code ("UCC") (FAC ¶¶ 13–15); (2) quiet title (id. ¶ 16); (3) violations of the Texas Civil Practice and Remedies Code § 12.002 (id. ¶ 17); and (4) breach of contract (id. ¶ 19).  The First Amended Complaint also asserted that Defendant and its agents "should be held liable for all acts or practices committed" under the doctrine of respondeat superior.  (Id. ¶ 18.)  Finally, Plaintiff sought declaratory (id. ¶¶ 10–12) and injunctive relief (id. ¶¶ 22–23).

On December 11, 2012, Defendant filed a Motion to Dismiss. (Dkt. # 14.)  On December 21, 2012, Plaintiff filed a Response in Opposition to Defendant's Motion (Dkt. # 16), and Defendant filed a Reply in further support of its Motion on December 28, 2012 (Dkt. # 17).  This Court entered an Order granting Defendant's Motion to Dismiss.  (Dkt. # 21 ("Order").)

Plaintiff filed the instant Motion for New Trial after the Court issued its Order.  (Dkt. # 23.)  Defendant responded (Dkt. # 26) and also moved for sanctions against Plaintiff for filing the Motion for New Trial (Dkt. # 27).  Plaintiff

responded to Defendant's Motion for Sanctions (Dkt. # 29), and Defendant filed a

Reply.  (Dkt. # 30.)  Prior to the hearing, Plaintiff filed an Advisory to the Court

explaining recent Fifth Circuit case law.  (Dkt. # 33).  Defendant filed a Response.

(Dkt. # 34.)

DISCUSSION

I.    <u>Motion for New Trial (Motion to Amend Judgment)</u>

        Plaintiff's Motion for New Trial seeks relief under Federal Rules of

Civil Procedure 59(e) and 59(a)(1)(b).[2]  (Dkt. # 23 at 1.)  Plaintiff may seek an

amendment of this Court's Order granting Defendant's Motion to Dismiss by filing

a motion to alter or amend a court's judgment under Rule 59(e).  Rule 59(e)

permits a movant to challenge a judgment that has been granted in the absence of a

trial.  In effect, Rule 59(e) allows a court to reconsider its prior judgment.

        A Rule 59(e) motion "serve[s] the narrow purpose of allowing a party

'to correct manifest errors of law or fact or to present newly discovered evidence.'"

<u>Waltman v. Int'l Paper Co.</u>, 875 F.2d 468, 473 (5th Cir. 1989) (quoting <u>Keene</u>

<u>Corp. v. Int'l Fidelity Ins. Co.</u>, 561 F. Supp. 656, 665 (N.D. Ill. 1982)).  A motion

to alter or amend the judgment "is not the proper vehicle for rehashing evidence,

legal theories, or arguments that could have been offered or raised before the entry

---

[2]      Rule 59(a)(1)(b), however, only applies "after a non-jury trial."  Fed. R. Civ.
P. 59(a)(1)(b).  The Court dismissed Plaintiff's claims on a Motion to Dismiss; a
trial did not take place.

of judgment." <u>Templet v. HydroChem Inc.</u>, 367 F.3d 473, 478–79 (5th Cir. 2004)

(citing <u>Simon v. United States</u>, 891 F.2d 1154, 1159 (5th Cir. 1990)).

"Reconsideration of a judgment after its entry is an extraordinary

remedy that should be used sparingly." <u>Id.</u> at 479.  As such, there are only three

grounds for amending a judgment under Rule 59(e): (1) to correct a manifest error

of law or fact; (2) to account for newly discovered evidence; and/or (3) to

accommodate an intervening change in controlling law.  <u>Schiller v. Physicians</u>

<u>Resource Grp., Inc.</u>, 342 F.3d 563, 567 (5th Cir. 2003); <u>see also</u> <u>Homoki v.</u>

<u>Conversion Servs., Inc.</u>, 717 F.3d 388, 404 (5th Cir. 2013) ("A motion to amend

judgment under Fed. R. Civ. P. 59(e) 'must clearly establish either manifest error

of law or fact or must present newly discovered evidence and cannot raise issues

that could and should have been made before the judgment issued.'" (quoting

<u>Advocare Int'l, LP v. Horizon Lab., Inc.</u>, 524 F.3d 679, 691 (5th Cir. 2008))).  In

applying these three grounds, a district court has "considerable discretion" to

decide whether to reopen a case.  <u>Templet</u>, 367 F.3d at 479.

Plaintiff's instant Motion for New Trial relies on the first ground for

relief because he seeks to correct manifest errors of law.  (<u>See</u> Dkt. # 23 at 1 ¶ 1, 7

¶ 4.)  As a preliminary matter, the Court notes that Plaintiff's arguments in the

Motion for New Trial are incredibly difficult to follow.  In fact, at times it appears

as though Plaintiff is referring to a different Order than the one this Court filed.

For example, Plaintiff alleges that "this Court relies on the decisions in <u>Marsh</u>, <u>Kan</u>, and <u>Eskridge</u> as authority for arguing that the note and deed of trust are severable when it comes to foreclosure."  (<u>Id.</u> at 14 ¶ 13.)  However, the Court's Order never referred to "<u>Kan</u>" or "<u>Eskridge</u>."  Furthermore, the Court's Order did not refer to a "<u>Marsh</u>" case when discussing whether possession of the Note was needed to enforce the Deed of Trust.  (<u>See</u> Order at 7–10.)  The only reference to a "<u>Marsh</u>" case is in the "Injunctive and Declaratory Relief" section.  (<u>See</u> Order at 27 ("Thus, in the absence of a live substantive claim, Plaintiff's request for declaratory judgment must be dismissed.  <u>See, e.g.</u>, <u>Marsh</u>, 2012 WL 3756276, at *9.").)

Plaintiff also states that "[t]he Court's argument that the fraudulent assignment does not create a lien or claim on title [for purposes of Texas Civil Practice and Remedies Code § 12.002] is simply incorrect."  (Dkt. # 23 at 11 ¶ 9.)  Plaintiff argues that under Texas law an assignment constitutes a property interest for purposes of § 12.002.  (<u>Id.</u> at 11–12 ¶ 9.)  But this Court's Order <u>agreed</u> with Plaintiff that a mortgage assignment constitutes a "lien or claim" on property under § 12.002.  The Order specifically found that an "assignment of a deed of trust creates a claim to an interest in real property."  (Order at 22.)  The Court only dismissed Plaintiff's claim under § 12.002 because "Plaintiff did not plausibly allege sufficient facts to indicate that Defendant made, presented, or used a

fraudulent document"—a requirement under § 12.002(a)(1).  (Id.)  Plaintiff's claim was not dismissed because the assignment did not create a claim on title.  (See id. at 21–22.)

Moreover, Plaintiff's Motion for New Trial restates previous arguments.  For example, the beginning portion of Plaintiff's standing argument is nearly a verbatim repetition of Plaintiff's standing argument in Plaintiff's Response to Defendant's Motion to Dismiss.  (Compare Dkt. # 16 at 6–8 ¶ 14, with Dkt. # 23 at 6–7 ¶ 5.)  Plaintiff also repeats the same argument that he used in a prior brief regarding whether the fraudulent assignment creates a lien.  (Compare Dkt. # 16 at 14 ¶ 19, with Dkt. # 23 at 11–12 ¶ 9.)

Despite Plaintiff's unclear briefing, the Court will consider each of Plaintiff's arguments in his Motion for New Trial that are relevant to this Court's Order and have not been repeated.

A.    Using the Rule 9(b) Standard instead of the Rule 8 Pleadings Standard

Plaintiff argues that the Court erred by imposing "the 9(b) standard on the Plaintiff's pleadings instead of the Rule 8 pleadings standard."  (Dkt. # 23 at 2 ¶ 1(A).)  Presumably, Plaintiff refers to the Court's discussion regarding the alleged violations of the Texas Uniform Commercial Code, where the Court held that Plaintiff failed to state a claim that the assignment of the Deed of Trust was fraudulent because Plaintiff did not "allege with sufficient particularity the

circumstances constituting the alleged fraud as required by Federal Rule of Civil

Procedure 9(b)."  (Order at 18.)  The Court noted that Rule 9(b) requires a

heightened pleading standard whereby "a party must state with particularity the

circumstances constituting fraud or mistake."  (<u>Id.</u> (quoting Fed. R. Civ. P. 9(b)).)

Plaintiff did not satisfy this heightened pleading standard because Plaintiff's First

Amended Complaint "d[id] not allege any facts corroborating Plaintiff's

speculative conclusions that Susan Douglas lacked the authority to execute the

assignment or that Susan Douglas is a 'robosigner' (or what the significance of that

allegation is)."  (<u>Id.</u> at 18–19.)

       Applying Rule 9(b) to Plaintiff's allegations of fraud and forgery was

proper.  As the Court's Order explained, Rule 9(b) applies when a party "<u>alleg[es]</u>

<u>fraud or mistake</u>."  (<u>Id.</u> at 18 (emphasis added).)  If a party alleges fraud or

mistake, the party "must state with particularity the circumstances constituting

fraud or mistake."  (<u>Id.</u>)  Hence, Rule 9(b) applies to Plaintiff's claims even though

Plaintiff did not state an individual cause of action for fraud.  <u>See</u> <u>Lone Star Ladies</u>

<u>Inv. Club v. Schlotzsky's Inc.</u>, 238 F.3d 363, 368 (5th Cir. 2001) ("Rule 9(b)

applies by its plain language to all averments of fraud, whether they are part of a

claim of fraud or not.").  Determining whether Plaintiff has plausibly stated a claim

that the assignment was fraudulent plainly requires applying Rule 9(b).  <u>See, e.g.</u>,

<u>Thomas v. Bank of N.Y. Mellon</u>, 3:12-CV-4941-M-BH, 2013 WL 4441568, at *8

(N.D. Tex. Aug. 20, 2013) (applying Rule 9(b) to the plaintiffs' claims that the assignment was fraudulent).

Plaintiff also argues that the "Court erroneously urges that Plaintiff must have every piece of evidence fully investigated prior to filing a suit."  (Dkt. # 23 at 2 ¶ 3.)  However, as explained by the Fifth Circuit, courts apply Rule 9(b) "[i]n cases of fraud" because "Rule 9(b) has long played [a] screening function, standing as a gatekeeper to discovery, a tool to weed out meritless fraud claims sooner than later." U.S. ex rel. Grubbs v. Kanneganti, 565 F.3d 180, 186 (5th Cir. 2009).  "Courts are instructed to apply Rule 9(b) to fraud complaints with 'bite' and 'without apology.'" Id. (quoting Williams v. WMX Tech., Inc., 112 F.3d 175, 178 (5th Cir. 1997)).   Although the Court did not require "every piece of evidence," the Court required the "who, what, when, where, and how" of the alleged fraud as required by the Fifth Circuit. See U.S. ex rel. Willard v. Humana Health Plan of Tex., 336 F.3d 375, 384 (5th Cir. 2003).  Plaintiff was required-before filing his claims of fraud—to "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." Southland Sec. Corp. v. INSpire Ins. Solutions, Inc., 365 F.3d 353, 362 (5th Cir. 2004) (emphasis added) (quoting Williams, 112 F.3d at 177–78).  "Plaintiff's allegation that the document 'may itself be a fake, fraudulent and void' (FAC ¶ 17) is wholly conclusory and

unsupported by any facts." (Order at 19.) Thus, this Court properly held that

Plaintiff's allegations of fraud fail under Rule 9(b).

Plaintiff additionally argues:

> So . . . long as the bank can understand [why] we are suing them
> because we assert [that] they are not the legal holder of the note and
> that we are alleging that the Plaintiff's agent forged or "ghost wrote"
> the assignment and then filed it, and that those allegations state a
> claim then we state a claim that should not be dismissed.

(Dkt. # 23 at 2 ¶ 1(A).)  But Plaintiff's argument confuses the notice pleading

standard under Rule 8(a) with the heighted pleading standard for averments of

fraud under Rule 9(b).  It is true that Rule 9(b) supplements, but does not supplant,

Rule 8(a)'s notice pleading standard.  <u>Kanneganti</u>, 565 F.3d at 186.  But it is also

true that Rule 9(b) only requires a "simple, concise, and direct" allegation of the

circumstances constituting the fraud.  <u>Id.</u>  "[M]erely ensuring notice" to Defendant,

as Plaintiff asserts, "is not enough for Rule 9(b)."  <u>Ind. Bell Telephone Co. Inc. v.</u>

<u>Lovelady</u>, No. SA-05-CA-285-RF, 2006 WL 485305, at *2 (W.D. Tex. Jan. 11,

2006).

In sum, the Court properly applied Rule 9(b) to Plaintiff's averments

of fraud, and as identified in the Court's Order, Plaintiff's First Amended

Complaint does not sufficiently allege facts corroborating the allegations of fraud

to satisfy the heightened pleading requirements of Rule 9(b).

B.    Election of Remedies

Plaintiff next argues that the Court has "fallen for the election of remedies argument" and the Court "ignores over 100 years of Texas law in reaching this decision." (Dkt. # 23 at 5 ¶ 1(B).) Plaintiff initially asserts, "It is not true that the bank does not have to be the holder of the note in order to enforce the deed of trust." (Id.) According to Plaintiff, "there is not one Texas case that stands for the proposition that you do not have to be the holder of the note in order to enforced [sic] the deed of trust." (Id.) This Court and the Fifth Circuit, in two recently authored opinions, disagree.

As the Court's Order explained, Texas law makes clear that the right to recover on the promissory note and foreclose on the deed of trust may be undertaken in independent actions. (See Order at 7–8 (citing Aguero v. Ramirez, 70 S.W.3d 372, 374 (Tex. App. 2002).) A mortgagee may elect to foreclose solely under a power of sale conferred by a deed of trust. (See id. at 8 (citing Tex. Prop. Code §§ 51.002, 51.0025).) A "mortgagee" is defined under the Texas Property Code to include a "beneficiary" of a security instrument. (See id. at 9 (citing Tex. Prop. Code § 51.0001(4)).) The Court's Order found that the "Deed of Trust identified MERS as 'the beneficiary of this Security Instrument' and nominee for the lender Countrywide and its successors and assigns," and therefore, as a

12

mortgagee, MERS was able to assign its interest in the Deed of Trust to Defendant. (<u>See</u> <u>id.</u>)

The Fifth Circuit has recently affirmed this principle.  <u>See</u> <u>Casterline v. OneWest Bank, F.S.B.</u>, -- F. App'x --, 2013 WL 3868011, at *3 (5th Cir. July 3, 2013) (holding that MERS is a "beneficiary . . . of a security instrument" and is thus a mortgagee with the corresponding right to foreclose).

MERS also qualifies as a mortgagee who can assign foreclosure rights to Defendant because it is a "book entry system."  <u>See</u> <u>Martins v. BAC Home Loans Serv., L.P.</u>, 722 F.3d 249, 254–55 (5th Cir. 2013).  In <u>Martins</u>, the Fifth Circuit noted that Texas Property Code § 51.0001(4) defines a mortgagee as both "the grantee, beneficiary, owner, and holder of a security instrument" and a "book entry system."  <u>Id.</u>  The court also stated that "[t]he Code defines a 'book entry system' as 'a national book entry system for registering a beneficial interest in a security instrument that acts as a nominee for the grantee, beneficiary, owner, or holder of the security instrument and its successors and assigns.'"  <u>Id.</u> (citing Tex. Prop. Code § 51.0001(1)).   The court concluded:

> Because MERS is a book-entry system, it qualifies as a mortgagee.  Thus, the Texas Property Code contemplates and permits MERS either (1) to grant the mortgage servicer the authority to foreclose or, if MERS is its own mortgage servicer, (2) to bring the foreclosure action itself.  In either event, the mortgage servicer need not hold or own the note and yet would be authorized to administer a foreclosure.

13

Id.  Because "the mortgage was assigned to MERS . . . [and] the assignment explicitly included the power to foreclose by the deed of trust," the court held that "MERS . . . did not need to possess the note to foreclose."  Id.

      In light of the recent Fifth Circuit opinions holding that Texas law does not require the production of a promissory note to institute a non-judicial foreclosure, the Court accurately held that Plaintiff did not need to be the "holder" of the Note to foreclose on the Property.

      C.     Fraudulent Assignment

      Plaintiff next contends that the assignment of the Note was fraudulent and illegal and, therefore, void.  (See Dkt. #23 at 5–11 ¶¶ 1(C)–8.)  Here, however, the Note was not assigned.  In fact, Plaintiff's First Amended Complaint stated: "There is no assignment of record from COUNTRYWIDE HOME LOANS, INC. to the Defendant herein and therefor [sic] Defendant is not the record owner of the Note."  (FAC at 3 ¶ 5.)  Plaintiff's arguments in his Motion for New Trial likely refer to another case Plaintiff's counsel has before the Court.

      To the extent that Plaintiff challenges the assignment of the Deed of Trust (see Dkt. #23 at 5–11 ¶¶ 1(C)–8), the Court will address whether Plaintiff can make such a challenge.

1.  Standing

This Court's Order previously held that a plaintiff-borrower has standing to challenge an assignment on any ground that renders the assignment void or invalid—rather than voidable.  (See Order at 13–14.)

The Fifth Circuit recently affirmed this very principle in Reinagel v. Deutsche Bank Nat'l. Trust Co., 722 F.3d 700, 706–07 (5th Cir. 2013).  In Reinagel, the court directly addressed whether a plaintiff has standing to challenge the validity of an assignment of the deed of trust from the loan originator to a subsequent lending institution.  Id. at 706.  The court first observed that "Texas courts have held that a non-party to a contract cannot enforce the contract unless [the non-party] is an intended third-party beneficiary."  Id. (citing S. Tex. Water. Auth. v. Lomas, 223 S.W.3d 304, 306 (Tex. 2007)).  But the plaintiff in Reinagel was not attempting to enforce the terms of the contract; rather, the plaintiff was arguing that the assignment was void ab initio.  Id.  The court held:

> Though "the law is settled" in Texas that an obligor cannot defend against an assignee's efforts to enforce the obligation on a ground that merely renders the assignment voidable at the election of the assignor, Texas courts follow the majority rule that the obligor may defend "on any ground which renders the assignment void."  A contrary rule would lead to the odd result that Deutsche Bank could foreclose on the Reinagels' property though it is not a valid party to the deed of trust or promissory note, which, by Deutsche Bank's reasoning, should mean that it lacks "standing" to foreclose.

Id.

Thus, as <u>Reinagel</u> confirmed, Plaintiff's standing is predicated on whether Plaintiff's challenge to the assignment renders the Deed of Trust void or voidable.  The Court's Order found that Plaintiff's challenge to the assignment-namely, that Mrs. Douglas fraudulently "purports" to be an assistant secretary of MERS—would render the assignment voidable, not void.  (Order at 13–14 (citing <u>Nobles v. Marcus</u>, 533 S.W.2d 923, 925 (Tex. 1976) (finding that a deed procured by fraud is voidable—not void—by the grantor)).)  Therefore, the Court held that Plaintiff did not have standing to challenge the assignment of the Deed of Trust.  (Order at 14.)  Plaintiff does not cite any contrary authority to warrant reconsidering this Court's holding.

To the extent that Plaintiff argued that the assignment of the Deed of Trust is a forgery (<u>see</u> FAC at 8 ¶ 17 ("Further the document may itself be fake, fraudulent and void because the signature on the document may not actually be the signature of Mrs. Douglas."), the Court finds that Plaintiff did not adduce enough evidence to support such an assertion.  <u>See, e.g.</u>, <u>Tucci v. Smoothie King Franchises, Inc.</u>, 215 F. Supp. 2d 1295, 1302 (M.D. Fla. 2002) (holding that the complaint did not satisfy Rule 9(b) where there were no facts alleged to support that the defendant knew that a signature on an agreement had been forged or that the defendant had anything to do with the alleged forgery).

16

In sum, the Court's Order properly concluded that Plaintiff did not have standing to challenge the assignment of the Deed of Trust because his claims that the assignment was fraudulent would render the assignment voidable, and Plaintiff failed to state a claim that the assignment of the Deed of Trust is a forgery.

D.   <u>Fraudulent Assignment Does Not Create a Lien</u>

Plaintiff next avers that he has pleaded sufficient facts to state a claim under Texas Civil Practice and Remedies Code § 12.002 by alleging that Defendant filed a fraudulent assignment with the Bexar County Clerk.  (Dkt. # 23 at 11–12 ¶ 9.)

Section 12.002 provides:

(a) A person may not make, present, or use a document or other record with:

(1) knowledge that the document or other record is a fraudulent court record or a fraudulent lien or claim against real or personal property or an interest in real or personal property;

(2) intent that the document or other record be given the same legal effect as a court record or document of a court created by or established under the constitution or laws of this state or the United States or another entity listed in Section 37.01, Penal Code, evidencing a valid lien or claim against real or personal property or an interest in real or personal property; and

(3) intent to cause another person to suffer:
    (A) physical injury;
    (B) financial injury; or
    (C) mental anguish or emotional distress.

Tex. Civ. Prac. & Remedies Code § 12.002(a).

Although the Court's Order held that an assignment of the Deed of Trust <u>does</u> create a claim against real property, the Court found that Plaintiff failed to state a claim under § 12.002 because "Plaintiff . . . failed to plausibly allege facts indicating that Defendant made, presented, or used a <u>fraudulent</u> document." (Order at 22.)  Thus, Plaintiff failed to state a claim under § 12.002 because Plaintiff did not meet § 12.002(a)(1)'s requirement that Defendant had "knowledge that the document or other record is fraudulent."  (<u>Id.</u>)

Plaintiff's only argument in his Motion for New Trial is that another district court found that similar pleadings alleging fraud met the heightened pleading standards of Rule 9(b).  (Dkt. # 23 at 12–13 ¶ 9 (citing <u>Wilborn v. AMS Serv. LLC, CA</u>, No. 5:13-cv-001 (W.D. Tex. Feb. 12, 2013)).)  However, a district court "is not bound by the decisions of another district court."  <u>Causey v. K & B, Inc.</u>, 670 F. Supp. 681, 689 (E.D. La. 1987).

Even assuming Plaintiff's fraud theory satisfied the heightened pleading standard under Rule 9(b), Plaintiff's § 12.002 claim should still be dismissed.  Plaintiff's First Amended Complaint does not allege sufficient facts to show, or even suggest, that Defendant acted with intent to cause Plaintiff "physical injury, financial injury, or mental anguish or emotional distress."  <u>See</u> Tex. Civ. Prac. & Rem. Code § 12.002(a)(3)(A)–(C).  Plaintiff's First Amended Complaint

only states that Defendant violated Chapter 12 "with the intent to cause Plaintiff to suffer (1) Financial Injury [and] (2) Mental Anguish or Emotional Distress." (FAC at 8 ¶ 16.) However, these allegations are conclusory and merely parrot back the language of the statute. Thus, they are insufficient to support a plausible claim for relief. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (holding that to survive a motion to dismiss, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do").

E.     Breach of Contract

Plaintiff next contends that Defendant materially breached the contract (thereby excusing Plaintiff's performance) by refusing to accept Plaintiff's tender of $4,500. (Dkt. # 23 at 14 ¶ 11.)[3] Presumably, Plaintiff wishes to proffer this "new evidence" to justify a motion for reconsideration under Rule 59(e).

First and foremost, Defendant was not a party to the Note, nor an assignee of the Note. Plaintiff's First Amended Complaint stated: "There is no assignment of record from COUNTRYWIDE HOME LOANS, INC. to the Defendant herein and therefor [sic] Defendant is not the record owner of Note."

---

[3]     Curiously, Plaintiff's argument regarding Plaintiff's attempted tender of $4,500 mirrors other arguments (even the same dollar amount) brought by two other plaintiffs with current pending Motions for New Trial before this Court. (See No. 5:12-cv-909, Dkt. # 33 at 19 (alleging that Plaintiffs Tyler attempted to tender $4,500 to the bank); No. 5:12-cv-905, Dkt. # 30 at 13, 19 (alleging that Plaintiff Rodriguez attempted to tender $4,500 to the bank).)

(FAC at 3 ¶ 5.)  Because Defendant was not a party to the contract, Plaintiff does

not have a cause of action against Defendant for breach of contract.

However, even if Defendant was a party to the Note, Plaintiff's breach

of contract claim should still be dismissed.  It is undisputed that Plaintiff failed to

make timely mortgage payments.  (Dkt. # 23 at 20 ¶ 17.)  As this Court's Order

noted, the second element of a breach of contract claim requires that a plaintiff

perform or tender performance.  (<u>See</u> Order at 25 (citing <u>Wright v. Christian &</u>

<u>Smith</u>, 950 S.W.2d 411, 412 (Tex. App. 1997)).)  The Note describes the

borrower's performance: "If I am in default, the Note Holder may send me a

written notice telling me that if I do not pay the overdue amount by a certain date,

the Note Holder may require me to <u>pay immediately the full amount of Principal</u>

that has not been paid and all the interest that I owe on that amount."  (Dkt. # 14,

Ex. 1 at 4 (emphasis added).)  As such, even assuming Plaintiff did attempt to

tender $4,500, Plaintiff still cannot proceed on his breach of contract claim because

Plaintiff does not allege enough facts to demonstrate that the payments satisfied

Plaintiff's obligations under the Note.  (<u>See</u> Order at 25.)

Plaintiff alternatively claims that Defendant did not give Plaintiff

notice to cure within thirty days as required by the Note and therefore

anticipatorily breached, thus excusing Plaintiff's performance.  (Dkt. # 23 at 14–15

¶ 11.)  Again, the Court notes that Defendant was not assigned the Note—only the

Deed of Trust.  But even assuming Defendant was the assignee of the Note, failing

to provide notice or an opportunity to cure still does not resuscitate Plaintiff's

breach of contract claim because failing to provide an opportunity to cure does not

constitute an anticipatory repudiation.  See May v. Wells Fargo Home Mortg.,

3:12-CV-4597-D, 2013 WL 2984795, at *3 (N.D. Tex. June 17, 2013) (holding

that the plaintiff's allegations that Wells Fargo failed to provide notice or an

opportunity to cure are insufficient to allege that Wells Fargo absolutely repudiated

the contract).

      In conclusion, Plaintiff's arguments in his Motion for New Trial are

unavailing.  Plaintiff's First Amended Complaint was properly dismissed.

## II.   Motion for Sanctions

      Defendant moves for sanctions pursuant to the "Court's inherent

authority" and 28 U.S.C. § 1927.  (Dkt. # 27.)  Defendant argues that Plaintiff's

counsel acted in "bad faith" by filing the Motion for New Trial after "admit[ting]

on the record he had no reason to suspect that the assignment at issue was

procured as a result of forgery or fraud" and after admitting he filed the lawsuit to

stop the foreclosure.  (Id. at 3–4 ¶¶ 8–9.)  According to Defendant, Plaintiff

counsel's assertion that "another party has committed a criminal act while

knowing the accusation is baseless is beyond the pale and reveals [Plaintiff

counsel's] flagrant disregard for the function and purpose of the courts." (Id. at

4 ¶ 9.)

     A.     <u>Inherent Authority to Impose Sanctions</u>

     It has long been understood that "[c]ertain implied powers must

necessarily result to our Courts of justice from the nature of their institution," and

that these powers "cannot be dispensed with in a Court, because they are necessary

to the exercise of all others." <u>Chambers v. NASCO, Inc.</u>, 501 U.S. 32, 43 (1991)

(Scalia, J., dissenting) (quoting <u>United States v. Hudson</u>, 7 Cranch 32, 34 (1812)).

For this reason, "Courts of justice are universally acknowledged to be vested, by

their very creation, with power to impose silence, respect, and decorum, in their

presence, and submission to their lawful mandates." <u>Id.</u> (citing <u>Anderson v. Dunn</u>,

6 Wheat. 204, 227 (1821)).  As such, the Court has "inherent authority to impose

sanctions 'in order to control the litigation before it.'" <u>Positive Software Solutions,</u>

<u>Inc. v. New Century Mortg. Corp.</u>, 619 F.3d 458, 460 (5th Cir. 2005) (quoting

<u>NASCO, Inc. v. Calcasieu Television & Radio, Inc.</u>, 894 F.2d 696, 703 (5th Cir.

1990), <u>aff'd sub nom.</u> <u>Chambers</u>, 501 U.S. at 32).

     Because these vested powers carry a certain "potency," courts are

instructed to wield them with "restraint and discretion." <u>Chambers</u>, 501 U.S. at 44.

"[I]n order to impose sanctions against an attorney under its inherent power, a

court must make a specific finding that the attorney acted in 'bad faith.'" <u>Elliott v. Tilton</u>, 64 F.3d 213, 217 (5th Cir. 1995).

      B.    <u>28 U.S.C. § 1927</u>

          Pursuant to 28 U.S.C. § 1927, a court may "sanction an attorney (as distinguished from a party) who unnecessarily multiplies proceedings by requiring him [or her] to pay the costs of litigation." <u>F.D.I.C. v. Calhoun</u>, 34 F.3d 1291, 1296 (5th Cir. 1994); <u>see</u> <u>Matta v. May</u>, 118 F.3d 410, 413–14 (5th Cir. 1997) (holding that monetary sanctions may be "imposed only on offending attorneys; clients may not be ordered to pay such awards").

          Section 1927 states in full:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927.  "Before a sanction under § 1927 is appropriate, the offending attorney's multiplication of the proceedings must be both 'unreasonable' and 'vexatious.'" <u>F.D.I.C. v. Conner</u>, 20 F.3d 1376, 1384 (5th Cir. 1994).  The Fifth Circuit has held that this standard requires "that there be evidence of bad faith, improper motive, or reckless disregard of the duty owed to the court." <u>Edwards v. Gen. Motors Corp.</u>, 153 F.3d 242, 246 (5th Cir. 1998).

Even if a court finds any of the foregoing evidence, the liability created under § 1927 is only for excessive costs due to persistent prosecution of a meritless claim.  <u>Browning v. Kramer</u>, 931 F.2d 340, 344 (5th Cir. 1991). Punishment under § 1927 "may not shift the entire financial burden of an action's defense."  <u>Calhoun</u>, 34 F.3d at 1297.

      C.    <u>Plaintiff's Counsel Did Not Act in Bad Faith or Vexatiously Multiple the Proceedings</u>

Though a close call, the Court is unable to conclude that Plaintiff's counsel acted in "bad faith" or vexatiously multiplied the proceedings in filing the Motion for New Trial.  The transcript of the hearing reveals that Plaintiff's counsel may have had some—though minimal—evidence.  For example, counsel averred that "on the MERS allegations we have a whole index of people that are, that are robo-signers where we know the signatures are fraudulent."  (Dkt. # 28 at 9:16-18.) Counsel later asserted that the document may be a forgery because it may be "from one of the document mills in Florida."  (<u>Id.</u> at 11:1–2.)

However, when questioned by the Court, counsel admitted that he lacked at least some evidence of fraudulent conduct:

> THE COURT: Do you -- and, you know, [fraud is] a very serious allegation. Do you have any evidence that that's the case here?

> MR. GRUBBS: Not, not in these cases yet, your Honor.  We haven't hired the expert related to the handwriting yet, but we have in other cases, your Honor.

24

(<u>Id.</u> at 11:3–8.)   But then counsel reasserted that he does have evidence:

> THE COURT: And you make this allegation without any evidence at all.
>
> MR. GRUBBS: No, your Honor.  We make it based on a robo-signing database.
>
> THE COURT: I said, do you have any evidence in this case that it happened and you acknowledged that you didn't.
>
> MR. GRUBBS: We don't, we don't have the handwriting results from our experts back yet, your Honor.

(<u>Id.</u> at 11:16–19.)  Counsel then admitted that he filed suit prior to receiving the handwriting results in order to stop the foreclosure.  (<u>Id.</u> at 12:2–3.)  The Court expressed sincere concern that counsel filed a complaint alleging fraud and forgery without <u>already</u> having some evidence that a fraud or forgery took place.

Despite several of Plaintiff's counsel's concessions at the hearing on Defendant's Motion to Dismiss, the Court finds that Plaintiff's counsel did not go so far as to admit that he had no evidence to support his claims for fraud and forgery.  Rather, Plaintiff's counsel relied on the "robo-signing database" and averred that the assignment of the Deed of Trust signed by the alleged "robo-signer" was fraudulent.  Although Plaintiff's theories did not-and do not—state a claim for relief, this does not necessarily mean that Plaintiff's counsel acted in bad faith or vexatiously multiplied the litigation.  When Plaintiff filed his Motion for

New Trial, the Fifth Circuit had not yet published an opinion rejecting Plaintiff's

theories.  As a result, the Court does not find that sanctions are warranted.

Nevertheless, the Court takes this opportunity to admonish Plaintiff's

counsel that he cannot continue to prosecute lawsuits that levy charges of fraud and

forgery in connection with a mortgage assignment predicated solely on alleged

evidence from a "robosigning database."  Plaintiff's counsel is on notice that for

future cases, <u>the Court will require evidence of fraud or forgery</u> and will not

indulge future plaintiffs with speculative theories.  The continued filing of such

complaints in direct contradiction of Fifth Circuit case law and the law of this

Court would clearly be grounds for sanctions in the future.

CONCLUSION

For the foregoing reasons, the Court **DENIES** Plaintiff's Motion for a

New Trial (Dkt. # 23) and **DENIES** Defendant's Motion for Sanctions (Dkt. # 27).

IT IS SO ORDERED.

DATED: San Antonio, Texas, October 31, 2013.

_____

David Alan Ezra
Senior United States Distict Judge